UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| TYRONE ANDERSON | ) | No. |
| | ) | |
| Plaintiff, | ) | HON. |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF MICHIGAN | ) | |
| THIRD CIRCUIT COURT | ) | |
| | ) | |
| Defendant. | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2254

Petitioner, TYRONE ANDERSON, through undersigned counsel, pursuant to all rights available under the Constitution, laws, or treaties of the United States, respectfully petitions this Court for a Writ of Habeas Corpus declaring unconstitutional his continued pre-trial incarceration without bond.

## **Table of Contents**

Table of Contents .................................................................... ii

INDEX OF AUTHORITIES ................................................ iii

**INDEX OF EXHIBITS** ...................................................... iv

PARTIES ................................................................................ v

JURISDICTION AND VENUE ........................................... vi

PROCEDURAL HISTORY ................................................. vii

STATEMENT REGARDING PROCEDURAL DEFENSES ................. x

STATEMENT OF FACTS .................................................... xi

**CLAIMS FOR RELIEF** ..................................................... 1

I.   INTRODUCTION ........................................................ 1

   a.   Defendant's Right to Counsel Under the Michigan Constitution and the United States Constitution Were Violated When Proceedings Were Remanded to the Grandy Jury Post Indictment. ............................. 3

   b.   Defendant's Due Process Rights Were Violated When the Trial Court Ignored the Maxims of Statutory Construction and Remanded the Case to the Grand Juror in Clear Violation of Michigan Law ................. 5

II.  THE PRESENT CASE QUALIFIES AS A SPECIAL CIRCUMSTANCE UNDER THE PURVIEW OF 28 U.S.C. § 2254 SINCE THE DEFENDANT'S SIXTH AMENDMENT RIGHTS WERE VIOLATED ........... 8

III.  THE PRESENT CASE QUALIFIES AS A SPECIAL CIRCUMSTANCE UNDER THE PURVIEW OF 28 U.S.C. § 2254 SINCE THE DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED. .............. 13

IV.  CONCLUSION AND RELIEF SOUGHT ............... 18

# INDEX OF AUTHORITIES

**Cases**

*Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973) ...............9

*Chambers v. Florida*, 309 U.S. 227, 236-237 (1940)..................................................3

*Gully v. Kunzman*, 592 F.2d 283 (6th Cir. 1979)........................................................9

*Hurtado v California*, 110 U.S. 516 (1948)................................................................1

*In re Oliver,* 68 S. Ct. 499, 506 (1948) .......................................................................3

*In re Palm,* 255 Mich. 632, (1931) ......................................................................4, 11

*McNeil v. Wisconsin*, 501 U.S. 171, 174–177 (1991)................................................xv

*People v Green,* 322 Mich App 676, 684 (2019).................................................5, 11

*People v. Borchard–Ruhland* , 460 Mich. 278, 284, (1999) ....................................6

*People v. Boscaglia* , 419 Mich. 556, 563 (1984) ....................................................6

*People v. Buie* (On Remand), 298 Mich.App. 50, 61, 825 N.W.2d 361 (2012) .5, 11

*People v. Farquharson*, 274 Mich. App. 268, 273 (2007) .................................4, 11

*People v. Glass*, 464 Mich. 266, 278-279 (2001)....................................................11

*People v. Glass*, 464 Mich. 266, 278-79 (2001) .......................................................4

*People v. Hickman*, 470 Mich. 602, 607 (2004) ..................................................4, 11

*People v. Lowe* , 484 Mich. 718, 721–722, (2009).............................................6, 16

*People v. Morris*, 228 Mich. App. 380, 385 (1998) ...........................................4, 11

*People v. Smielewski*, 214 Mich. App. 55, 60–61 (1995)........................................xv

*Prince v. Georgia*, 398 U.S. 323, 331 (1970)...........................................................9

**Statutes**

28 U.S.C. § 2241(d) ................................................................................................ vi

28 U.S.C. § 2254(b)(1)(B) ....................................................................................8, 9

28 U.S.C. §§ 1331 ................................................................................................... vi

MCL 767.3 ................................................................................................................7

Mich Const Art. 1, § 20 ...........................................................................................4

## <u>INDEX OF EXHIBITS</u>

Exhibit A- September 4, 2020, Order

Exhibit B- Notice of Receipt and Order, July 13, 2020

Exhibit C- Michigan Court of Appeals Order Denying Defendant's Interlocutory Appeal

Exhibit D- Michigan Supreme Court Order denying Defendant's Application for Leave to Appeal

Exhibit E- MCL 767.3

## **PARTIES**

Petitioner Tyrone Anderson is a pre-trial detainee in the Wayne County Jail, City of Detroit, County of Wayne, State of Michigan, currently awaiting trial in the Third Circuit Court for the County of Wayne.

Respondent is Third Circuit Court for the County of Wayne, State of Michigan, located in the Eastern District of Michigan, Southern Division.

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 2241(a), and 2254(a).  Venue is proper in the United States District Court for the Eastern District of Michigan under 28 U.S.C. § 2241(d) because it is the court for the district within which Mr. Anderson is currently being detained.

## **PROCEDURAL HISTORY**

Tyrone Anderson was alleged to have committed the crimes of: two counts of *Assault With Intent to Murder*, contrary to MCL 750.83; two counts of *Assault With Intent to Do Great Bodily Harm Less Than Murder*, contrary to MCL 750.84; two counts of *Weapons Felony Firearm*, contrary to MCL 750.227b(A); and, *Weapons – Carrying Concealed*, contrary to MCL 750.227.

On April 17, 2020, a Motion to Dismiss was filed in the trial Court. At issue was identification of Defendant by the one-man grand jury, and incorrect photo identification of Defendant.

On June 5, 2020, a motion hearing was held, the honorable Mark T. Slavens, presiding. The Motion, which argued in sum, that due to a clear lack of evidence and incorrect photo identification, this case must be dismissed. Following the Motion Hearing, the case was then remanded back to the Grand Juror in violation of Michigan Statute, MCL 767.3, for correction of error in probable cause finding.

On June 30, 2020, the Grand Juror reconvened and found the following: "A review of the record shows that the Grand Jury did mis-state the evidence about Anderson." (April 4, 2019 transcript; page 25, lines 9-12).

On August 3, 2020, Defendant filed his Second Motion to Dismiss. The Motion argued that the Grand Juror's decision to convene on June 30, 2020, without notice to defense counsel or defense counsel present is a clear violation of the *Sixth*

*Amendment Right to Counsel*, as the right to counsel had attached once the indictment had been filed and Defendant had been arraigned.

On September 4, 2020, a second motion hearing was held, the honorable Mark T. Slavens presiding.  At the conclusion of the Motion Hearing, the honorable Mark T. Slavens denied Defendant's Motion stating:

> However, after reviewing the file with regard to this matter I don't feel Judge Jackson has violated anybody's rights. This was sent back to him to have him review, and I don't believe that there was any need for counsel to be, defense counsel to be present for that review, for the defendant to be reviewed.[1]

On September 22, 2020, Defendant-Appellant filed an Interlocutory Application for Leave to Appeal in the Court of Appeals (CoA Docket No. 354885), arguing, again in sum, that Defendant's Sixth Amendment Right to Counsel had been violated as once he had been arraigned, the right to counsel had attached, and that at any pertinent proceeding his Sixth Amendment Right would be implicated.

On October 23, 2020, the Court of Appeals issued its ruling denying Defendant-Appellant's Interlocutory Application for Leave to Appeal for "failure to persuade the Court of the need for immediate appellate review." *See* Exhibit C.

---

[1] Motion Hearing, September 4, 2020, pg 17, lines 7-19

On December 17, 2020, Defendant-Appellant filed an Application for Leave to Appeal in the Michigan Supreme Court, (Supreme Court Case No. 162382), arguing that Defendant's Sixth Amendment Right to Counsel was violated and that the Trial Court's s*ua sponte* "remand" to the one-man grand jury was outside the bounds of statutory construction.

On June 1, 2021, the Michigan Supreme Court issued its ruling denying Defendant-Appellant's Application for Leave to Appeal because it was "not persuaded that the question presented should be reviewed by [the] Court." *See* Exhibit D.

Defendant now files the instant Petition for a Writ of Habeas Corpus under 28 U.S.C § 2254.

## **STATEMENT REGARDING PROCEDURAL DEFENSES**

Federal habeas petitioners are usually, but not always, required to exhaust available state court remedies to obtain relief. 28 U.S.C. § 2254(b)(1). All of the claims in Mr. Anderson's petition are exhausted.

In federal habeas proceedings, the respondent must plead procedural defenses under Rule 5(b) of the Rules Governing § 2254 Cases in the United States District Courts. Under Rule 5(b), the respondent, by way of the Answer, "must address the allegations in the petition. In addition, [the answer] must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations." Mr. Anderson explicitly reserves the right to reply to any potential procedural defenses raised by Respondent regarding every claim in this petition.

## **STATEMENT OF FACTS**

On March 5, 2019, a One Man Grand Jury was convened in the Third Circuit Court before the Honorable Thomas E. Jackson to hear testimony regarding a non-fatal shooting of victim Allen Reese in the City of Detroit, County of Wayne, State of Michigan.[2]

During this proceeding, testimony was taken from witness Jermain Carson about the incidents which happened at or around 10645 Wayburn, in the City of Detroit.[3]  Mr. Carson testified that on the evening of March 3, 2019, between the hours of 10:00p.m. and 1:00a.m., Mr. Carson viewed a grey Nissan parked in front of the house next door with two occupants.[4]  At an unknown time, Mr. Carson viewed a black car with three occupants arrive and park behind the grey Nissan.[5] Subsequent to the black car's arrival, the three passengers of the black car exited the vehicle and approach the grey Nissan.[6]  Following the approach from the two individuals, the driver of the grey Nissan exits the vehicle, approaches the two unknown individuals, and all parties walk out of view.[7]

Approximately ten minutes later, Mr. Carson heard four to six gunshots.[8] Following the gunshots, Mr. Carson observed the driver and passenger of the

---

[2] Grand Jury Transcript, March 5, 2019 (hereinafter "GJI"), pg 4, lines 1-8
[3] GJI, pg 8, lines 12-14
[4] GJI, pg 9, lines 2-5
[5] GJI, pg 9, lines 9-12
[6] GJI, pg 9, lines17-21
[7] GJI, pg 9, lines17-21
[8] GJI, pg 10, lines 20-24

unidentified black car return  to the vehicle and get inside.[9]  Next, Mr. Carson testified that the third passenger of the unidentified black car returned and placed a black rifle in the backseat of the vehicle.[10]  While placing the black rifle in the car, the unknown person dropped his wallet, then returns to the grey Nissan, and the unidentified black car leaves with all three passengers.[11]  Subsequently, the driver of the grey Nissan returns to his vehicle, bleeding, and drives away.[12]  Grand Jury proceedings were then concluded for that day.

On March 7, 2019, grand jury proceedings resumed, and the testimony of Jazmine Craft was taken.[13]  Ms. Craft testified that on the day of the incident in question Ms. Craft lent her car to her friend Cameron Hangline [Haneline][14] in order for him to go to the store and pick up a "friend or his cousin".[15]  Mr. Hangline did not return, telling Ms. Craft that while he was with someone else, he had gotten robbed and no longer had the car in his possession.[16]  Grand jury proceedings then concluded for that day.

On March 12, 2019, Grand Jury proceedings resumed, and the testimony of Allen Reese was taken.[17]  Mr. Reese testified that on the day of the incident he was

---

[9] GJI, pg 11, lines 1-10
[10] GJI, pg 11, lines 12-19
[11] GJI, pg 11, lines 12-19
[12] GJI, pg 12, lines 1-5
[13] Grand Jury Transcript, March 7, 2019 (hereinafter "GJII"), pg 4, lines 1-13
[14] GJII, pg 10, lines 22-23
[15] GJII, pg 11, lines 3-5
[16] GJII, pg 11, lines 17-23
[17] Grand Jury Transcript, March 12, 2019 (hereinafter "GJIII"), pg 4, lines 1-8

picked up by a friend named "Stank" in a black Nissan.[18]  Mr. Allen and Stank were attempting to find some marijuana to smoke.[19]  Mr. Allen and Stank were to purchase marijuana from an individual only known by the name "Man-Man"[20] with a red tattoo on his face.[21]  After arriving at the agreed upon purchase location, Mr. Allen and Stank are waiting in the car when a car pulled behind them with Man-Man and two other unknown individuals inside.[22]  Man-Man, Stank, and Mr. Allen all exit their respective vehicles and head to the porch for the marijuana transaction.[23]  Mr. Allen testified that as the parties are waiting on the porch, the two unknown individuals exit Man-Man's car and begin firing.[24]  Mr. Allen was hit by the gunfire and fell onto the porch[25].  Five minutes later, Mr. Allen arose from the porch, got into the car he arrived in, attempted to drive away, and subsequently crashed approximately three blocks later.[26]  Mr. Allen was then transported by EMS to an area hospital.[27]  Grand Jury proceedings were then concluded for the day.

On April 4, 2019, Grand Jury proceedings resumed.  The People called officer James Dubois, a police officer with the Detroit Police Department, non-fatal

---

[18] GJIII, pg 9, lines 2-5
[19] GJIII, pg 8, lines 18-25
[20] GJIII, pg 9, lines 22-23
[21] GJIII, pg 10, line 1
[22] GJIII, pg 11, lines 4-10
[23] GJIII, pg 12, lines 2-4
[24] GJIII, pg 13, lines 16-21
[25] GJIII, pg 14, lines 14-17
[26] GJIII, pg 15, lines 5-7.
[27] GJIII, pg 15, lines 8-13

shooting team.[28]  Officer Dubois testified that during his investigation of the incident that occurred on March 3, 2019, (the instant shooting) he recovered video from the scene from a Ring doorbell camera.[29]   Officer Dubois further investigated the dropped wallet and the identification found inside was of Tyrone Anderson.[30] Officer Dubois contacted Mr. Anderson, who denied any participation in the shooting and stated that on the date in question he was at home with his father.[31] Officer Dubois testified that after a search warrant was procured, officers searched the home of Tyrone Anderson's father and recovered a pair of jogging pants which are alleged to be the same worn by a shooter in the video from the incident.[32]  At the conclusion of the Grand Jury proceedings, the People requested an indictment against Tyrone Anderson, Defendant, and Marcino Cartier Lattner.

On April 17, 2020, a Motion to Dismiss was filed in the trial court.  This Motion was heard before the trial court on June 5, 2020, which argued in sum, that due to a clear lack of evidence and incorrect photo identification, this case must be dismissed. Following the Motion Hearing, the case was then remanded back to the Grand Juror for correction of error in probable cause finding.

---

[28] Grand Jury Transcript, April 4, 2019 (hereinafter "GJIV"), pg 3, lines 2-24
[29] GJIV, pg 4, lines 7-13
[30] GJIV, pg 8, lines 3-6
[31] GJIV, pg 8, lines 16-23
[32] GJIV, pg 9, lines 9-13

On June 30, 2020 the Grand Juror reconvened and found the following: "A review of the record shows that the Grand Jury did mis-state the evidence about Anderson. (April 4, 2019 transcript; page 25, lines 9-12). The statement that Anderson was picked from a photo array is an error. It was the co-defendant, Lattner, that was identified from a photo array, not Anderson. [However,] [t]here was ample other evidence that supported and justified the indictment." *See* Exhibit B.

On August 3, 2020, Defendant filed his Second Motion to Dismiss. The Motion argued that the Grand Juror's decision to convene on June 30, 2020, without notice to defense counsel or defense counsel present is a clear violation of Defendant's *Sixth Amendment Right to Counsel*. Defendant further argued that the Sixth Amendment right to counsel is attached after adversarial judicial proceedings have been initiated. *People v. Smielewski*, 214 Mich. App. 55, 60–61 (1995) citing *McNeil v. Wisconsin*, 501 U.S. 171, 174–177 (1991) (emphasis added).

On September 4, 2020, a Motion Hearing was held on Defendant's Second Motion to Dismiss. At the conclusion of the Motion Hearing, the Honorable Mark T. Slavens denied Defendant's Motion, stating:

> However, after reviewing the file with regard to this matter I don't feel Judge Jackson has violated anybody's rights. This was sent back to him to have him review, and I don't believe that there was any need for counsel to be, defense

```
counsel to be present for that review,
for the defendant to be reviewed.[33]
```

On September 22, 2020, Defendant-Appellant filed an Interlocutory Application for Leave to Appeal in the Court of Appeals (CoA Docket No. 354885), arguing, again in sum, that Defendant's Sixth Amendment Right to Counsel had been violated as once he had been arraigned, the right to counsel had attached, and that at any pertinent proceeding his Sixth Amendment Right would be implicated.

On October 23, 2020, the Court of Appeals issued its ruling denying Defendant-Appellant's Interlocutory Application for Leave to Appeal for "failure to persuade the Court of the need for immediate appellate review." *See* Exhibit C.

On December 17, 2020, Defendant-Appellant Application for Leave to Appeal in the Michigan Supreme Court, (Supreme Court Case No. 162382), arguing that Defendant's Sixth Amendment Right to Counsel was violated and that the Trial Court's *sua sponte* "remand" to the one-man grand jury was outside the bounds of statutory construction.

On June 1, 2021, the Michigan Supreme Court issued its ruling denying Defendant-Appellant's Application for Leave to Appeal because it was "not persuaded that the question presented should be reviewed by [the] Court." *See* Exhibit D.

---

[33] Motion Hearing, September 4, 2020, pg 17, lines 7-19

Defendant now files the instant Petition for Writ of Habeas Corpus seeking relief.

**CLAIMS FOR RELIEF**

## I.   INTRODUCTION

The Fifth Amendment expressly provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." U. S. Const amend V.  However, the requirements for grand jury do not enumerate binding rules for the implementation of the grand jury upon the States. *Hurtado v California*, 110 U.S. 516 (1948).  States may modify the powers, size, or other features of the common law grand jury[34] or substitute an "information" for a grandy jury indictment. *Hurtado, supra*.

Although the processes of grand jury indictment and criminal complaint in the State of Michigan are in agreement with common practices in the United States, a third type of inquest into criminal wrongdoing is novel to the states of Michigan and Connecticut.  The "one man grand jury," born from *juge d'instruction*,[35] is codified under Michigan Compiled Laws 767.3

---

[34] *Talton v Mayes,* 163 U.S. 376 (1896).

[35] E.R. Keedy, "Preliminary Investigation of Crime in France," *University of Pennsylvania Law Review*, LXXXVIII (Feb., 1940), 409. *Juge d'instruction*, (French: judge of inquiry) in France, the magistrate is responsible for conducting the investigative hearing that precedes a criminal trial. In this hearing the major evidence is gathered and presented, witnesses are heard, and depositions taken. If the juge d'instruction is not convinced that there is sufficient evidence of guilt to warrant a trial at the end of the proceedings, no trial will occur. This process differs somewhat from the grand jury hearing in the Anglo-American system, under which the grand jury need only find probable cause in order to return an indictment for trial.

The French judicial system combined the roles of judge and police officer and provided that the inquest may be initiated by the *procureur* (prosecutor), the complainant, or the judge themselves.  Moreover, the judge may summon and interrogate witnesses *sua sponte* while under the veil of secrecy.  However, the accused is ultimately informed of the inquest and given the opportunity to make a statement in his or her defense.

1

Instituted in Michigan in 1917, the "one man grand jury," although "unique"[36] in its construction, has been the subject of much litigation and consternation. Championed by its proponents, the one-man grand jury was seen as a way of avoiding protections put in place by the United States Constitution and the Michigan Constitution.

> Law enforcement is handicapped by many technicalities. Some of these are safeguards of civil rights and liberties; some are loopholes through which the dishonest and the criminal can escape deserved punishment for wrongdoing. Under ordinary procedure, complaint setting for alleged offenses must be made before the prosecuting attorney. If he is satisfied that a crime or misdemeanor has been committed he issues a warrant. Then the matter is brought into court.
> Kim Sigler, *One Man Grand Jury Weapon of Justice*, Ann Arbor News, July 2, 1946.

Anglo American history shows numerous instances of distrust for secret trials. Notoriously compared to the practices used during the Spanish inquisition, the excesses of the English Court of Star Chamber, and the French monarchy's abuse of the *letter de cachet*, secret proceedings symbolize a menace to liberty, containing an instrument for the suppression of a political and religious heresies in ruthless disregard of the right of an accused to a fair trial.

The guarantee to an accused that his trial will be conducted in public has also always been recognized as a safeguard against any attempt to employ our courts as

---

[36] *In re Oliver*, 333 U.S. 257, 261 (1948).

2

instruments of persecution, serving as an effective restraint on possible abuse of judicial power.

"Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account.  Recordation, appeal, whatever other institutions might present themselves in the character of checks, would be found to operate rather as cloaks than checks; as cloaks in reality, as checks only in appearance." *In re Oliver,* 68 S. Ct. 499, 506 (1948) (quoting 1 Bentham, *Rationale of Judicial Evidence* 524 (1827)).  The right to be heard in open court before one is condemned is too valuable to be whittled away under the guise of "demoralization of the court's authority." *Id.* at 510.

It is "the law of the land" that no man's life, liberty or property be forfeited as a punishment until there has been a charge fairly made and fairly tried in a public tribunal. *Id.  See Chambers v. Florida*, 309 U.S. 227, 236-237 (1940).

> ### a. Defendant's Right to Counsel Under the Michigan Constitution and the United States Constitution Were Violated When Proceedings Were Remanded to the Grandy Jury Post Indictment.
>
> In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in prosecutions for misdemeanors punishable by imprisonment for not more than 1 year; to be informed of the nature of the accusation; to be confronted with the witnesses against him or her; to have compulsory process for obtaining witnesses in his or her favor; **to have the assistance of counsel for his or her defense**; to have an appeal as a matter of right, except as provided by law an appeal by an accused who pleads guilty or nolo contendere shall be

3

by leave of the court; and as provided by law, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal. Mich Const Art. 1, § 20 (emphasis added).

The Sixth Amendment right to counsel is attached after adversarial judicial proceedings have been initiated. *People v. Smielewski*, 214 Mich. App. 55, 60–61 (1995) (citing *McNeil v. Wisconsin*, 501 U.S. 171, 174–177 (1991)). "[I]t is now beyond question that, for federal Sixth Amendment purposes, the right to counsel attaches only at or after the initiation of adversarial judicial proceedings." *People v. Hickman*, 470 Mich. 602, 607 (2004).

"There is no state constitutional right to indictment by grand jury; rather, indictment by grand jury is an alternative charging procedure created by the Legislature." *People v. Glass*, 464 Mich. 266, 278-279 (2001), citing *In re Palm,* 255 Mich. 632, (1931).  In Michigan, grand jury proceedings are governed by MCL 767.1 *et seq. People v. Farquharson*, 274 Mich. App. 268, 273 (2007).

"A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, **it is an *ex parte* investigation** to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." *People v. Morris*, 228 Mich. App. 380, 385 (1998) (emphasis added). "No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry." *Id.*  "The right to counsel attaches **. . . only at or after the initiation of adversary judicial**

4

proceedings against the accused by way of a formal charge, preliminary hearing, indictment, information, or arraignment." *People v Green,* 322 Mich App 676, 684 (2019)(citing *People v. Buie* (On Remand), 298 Mich.App. 50, 61, 825 N.W.2d 361 (2012))(emphasis added).

It is unquestioned that adversarial proceedings had begun in the instant case. Defendant was indicted on February 14, 2020.  Defendant was arraigned on February 19, 2020.  From February 19, 2020, forward, Defendant had a right to counsel at all proceedings. *See Hickman, supra*; *Smielewski, supra*; *Buie, supra, Green, supra*; *See also* Mich Const Art. 1, § 20.

Defendant verily submits that after he was arraigned on February 19, 2020, adversarial proceedings against him had begun and his right to counsel had attached. *See Hickman, supra*; *Smielewski, supra*; *Buie, supra, Green, supra*; *See also* Mich Const Art. 1, § 20.  Further, Defendant asserts that any proceeding that followed, he was afforded a right to counsel. *See Hickman, supra*; *Smielewski, supra*; *Buie, supra, Green, supra*; See *also* Mich Const Art. 1, § 20.  Moreover, any communication from the trial court to the grand jury would be impermissible *ex parte* communication to direct the grand jury in its proceeding, which would render the impartiality and purpose of the grand jury a nullity. *See Morris, supra.*

> **b. Defendant's Due Process Rights Were Violated When the Trial Court Ignored the Maxims of Statutory Construction and Remanded the Case to the Grand Juror in Clear Violation of Michigan Law.**

A one person "grand jury is a creation of statute and draws its extraordinary powers from statute." *People v Farquharson*, 274 Mich App 268, 274 (2007). Under Michigan law, the one-man grand jury powers and procedures are defined by MCL 767.3. A grand jury proceeding alone determines the course of its inquiry. *See Morris, supra.* Any direction by a judge to sway the course of a grand jury inquiry violates the purpose of the grand jury proceeding and renders the purpose of said proceedings a nullity. *See Morris, supra.*

The maxims of statutory construction are immutable. When interpreting statutes, courts must assess statutory language in context and must construe the language according to its plain and ordinary meaning. *People v. Lowe* , 484 Mich. 718, 721–722, (2009).

If statutory language is unambiguous, courts must apply the language as written and further construction is neither required nor permitted. *People v. Borchard–Ruhland* , 460 Mich. 278, 284, (1999). "If a word is defined by statute, the word must be applied in accordance with its statutory definition." *Bush* at 246. "It is well settled that criminal statutes are to be strictly construed, absent a legislative statement to the contrary." *People v. Boscaglia*, 419 Mich. 556, 563 (1984).

Within the framework of MCL 767.3, the grand jury, or grand juror, has the power to summon and compel witness testimony, issue and enforce subpoenas, and

issue indictments on the evidence presented before it.  However, under the express power granted by MCL 767.3, there is no "remand" power.  Further, under the Michigan Code of Criminal Procedure, no such power to order a "remand" to a grand jury has been granted, inherently or expressly, to a trial judge.

Moreover, any remand for clarification falls afoul of the express intent of the grand jury process.  As opined by the court in *Morris, supra,* the purpose of the grand jury is to be an independent arbiter of facts based on the evidence before it.  To "remand" for "clarification" violates the independent findings and supersedes the original findings of the grand jury.  Any direction by a judge to sway the course of a grand jury inquiry violates the purpose of the grand jury proceeding and renders the purpose of said proceeding a nullity. *See Morris, supra.*

To recapitulate, a grand jury is an express statutory construction. *Farquharson*, *supra.* Under Michigan law, the one-man grand jury powers and procedures are defined by MCL 767.3.  When interpreting statutes, courts must assess statutory language in context and must construe the language according to its plain and ordinary meaning. *Lowe, supra.*  If statutory language is unambiguous, courts must apply the language as written and further construction is neither required nor permitted. *Borchard–Ruhland, supra.* "It is well settled that criminal statutes are to be strictly construed, absent a legislative statement to the contrary." *Boscaglia, supra.*

Michigan statute and case law do not grant the trial court the power to remand to the grand jury.  The statutory language that imbues the grand jury with its inherent powers are clear and unambiguous and must be strictly construed. *See* MCL 767.3, *supra*; *Lowe, supra*.  The Michigan Code of Criminal Procedure is clear and unambiguous, and does not permit remand to the grand jury, nor does it permit the Court further construction to allow as such. *Borchard–Ruhland, supra*.  Moreover, Michigan case law has stated that any communication from the trial court to the grand jury would be impermissible *ex parte* communication to direct the grand jury in its proceeding, which would render the impartiality and purpose of the grand jury a nullity. *See Morris, supra.*

## II.     THE PRESENT CASE QUALIFIES AS A SPECIAL CIRCUMSTANCE UNDER THE PURVIEW OF 28 U.S.C. § 2254 SINCE THE DEFENDANT'S SIXTH AMENDMENT RIGHTS WERE VIOLATED.

The United States Code statute pertaining to federal habeas corpus, 28 U.S.C. § 2254(b)(1)(B), provides that:

> (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> . . .
>
> (B)
>
> (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1)(B).

28 U.S.C. § 2254(b)(1)(B) dictates that in order for a writ of habeas corpus to be granted, it must be shown that either: (1) all available state remedies have been exhausted; or (2) special circumstances exist in the case. *Id.* In addition to the clear showing that Defendant has exhausted all state remedies pursuant to Section A, it is further demonstrable that Defendant falls under the 28 U.S.C. § 2254(b)(1)(B) special circumstances category as well.

The Court in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973), ruled "that federal habeas corpus does not lie, absent 'special circumstances,' to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgement of conviction by a state court." *Id.* at 489. The Court in *Braden* further enumerates that one such special circumstance occurs when seeking "to litigate a federal defense to a criminal charge." *Id.* In ruling that claims involving double jeopardy constitute a special circumstance as proscribed by 28 U.S.C. § 2254(b)(1)(B), the court in *Gully v. Kunzman*, 592 F.2d 283 (6th Cir. 1979), concluded that "asserting a constitutional immunity from having to undergo 'the risk or hazard of trial and conviction'" fell squarely within the purview of special circumstances. *Id.* at 287 (quoting *Prince v. Georgia*, 398 U.S. 323, 331 (1970)). Thus, a special circumstance exists as a basis to grant a writ of habeas corpus when

a federal defense asserted on constitutional grounds is raised in order to prevent trial. *Braden*, 410 U.S. at 489; *Gully*, 592 F.2d at 287.

The federal defense being asserted on constitutional grounds in the present case is a violation of the Sixth Amendment right to counsel. *Braden, supra*; *Gully, supra*. The Sixth Amendment of the United States Constitution dictates that "[i]n all criminal prosecutions, the accused shall enjoy . . . the assistance of counsel for his defense." U.S. Const. amend. VI. The Michigan Constitution further enumerates:

> In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in prosecutions for misdemeanors punishable by imprisonment for not more than 1 year; to be informed of the nature of the accusation; to be confronted with the witnesses against him or her; to have compulsory process for obtaining witnesses in his or her favor; **to have the assistance of counsel for his or her defense**; to have an appeal as a matter of right, except as provided by law an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court; and as provided by law, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal. Mich. Const. Art. 1, § 20 (emphasis added).

The Sixth Amendment right to counsel is attached after adversarial judicial proceedings have been initiated. *People v. Smielewski*, 214 Mich. App. 55, 60–61 (1995) (citing *McNeil v. Wisconsin*, 501 U.S. 171, 174–77 (1991)). "The Sixth Amendment right . . . does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings.'" *McNeil*, 501 U.S. at 175 (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984)). "[I]t is now

beyond question that, for federal Sixth Amendment purposes, the right to counsel attaches only at or after the initiation of adversarial judicial proceedings." *People v. Hickman*, 470 Mich. 602, 607 (2004).

"There is no state constitutional right to indictment by grand jury; rather, indictment by grand jury is an alternative charging procedure created by the Legislature." *People v. Glass*, 464 Mich. 266, 278–79 (2001) (citing *In re Palm*, 255 Mich. 632 (1931)). In Michigan, grand jury proceedings are governed by MCL 767.1 *et seq. People v. Farquharson*, 274 Mich. App. 268, 273 (2007).

"A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, **it is an *ex parte* investigation** to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." *People v. Morris*, 228 Mich. App. 380, 385 (1998) (emphasis added). "No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry." *Id.* "The right to counsel attaches . . . **only at or after the initiation of adversary judicial proceedings against the accused by way of a formal charge, preliminary hearing, indictment, information, or arraignment**." *People v. Green,* 322 Mich. App. 676, 684 (2019) (citing *People v. Buie* (On Remand), 298 Mich. App. 50, 61, 825 N.W.2d 361 (2012)) (emphasis added).

11

The basis on which the writ for federal habeas corpus should be granted is that, as described above, the Defendant was deprived of his Sixth Amendment right to counsel pursuant to the United States Constitution. A defendant's right to counsel falls under the protection of the Sixth Amendment of the United States Constitution, and the Defendant's right to counsel was violated when he was not afforded the right to counsel after his adversarial proceedings began following his February 19, 2020 arraignment. As such, the present case falls under the purview of a special circumstance as enumerated in 28 U.S.C. § 2254(b)(1)(B).

Special circumstances have been proscribed by 28 U.S.C. § 2254(b)(1)(B) as exigencies in a case that necessitate a writ of habeas corpus to be granted in federal court. Since a special circumstance exists as a basis to grant a writ of habeas corpus in federal court when a federal defense asserted on constitutional grounds is raised in order to prevent trial, *Braden, supra*; *Gully, supra*, the present case is clearly recognizable as a special circumstance. The constitutionally protected Sixth Amendment right to counsel in the present case is being asserted as a federal defense. Since a "constitutional immunity" is being asserted, the present case is a clear example of a special circumstance that 28 U.S.C. § 2254(b)(1)(B) proscribes as a basis on which to grant a writ of habeas corpus in federal court. Thus, the Defendant has satisfied the requirements of 28 U.S.C. § 2254(b)(1)(B), and a writ of habeas corpus in federal court should be granted.

### III. THE PRESENT CASE QUALIFIES AS A SPECIAL CIRCUMSTANCE UNDER THE PURVIEW OF 28 U.S.C. § 2254 SINCE THE DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED.

The United States Code statute pertaining to federal habeas corpus, 28 U.S.C. § 2254(b)(1)(B), provides that:

(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

. . .

(B)

(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1)(B).

28 U.S.C. § 2254(b)(1)(B) dictates that in order for a writ of habeas corpus to be granted, it must be shown that either: (1) all available state remedies have been exhausted; or (2) special circumstances exist in the case. *Id.* In addition to the clear showing that Defendant has exhausted all state remedies pursuant to Section A, it is further demonstrable that the Defendant falls under the 28 U.S.C. § 2254(b)(1)(B) special circumstances category as well.

The Court in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973), ruled "that federal habeas corpus does not lie, absent 'special circumstances,' to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgement of conviction by a state court." *Id.* at 489. The Court in *Braden* further

13

enumerates that one such special circumstance occurs when seeking "to litigate a federal defense to a criminal charge." *Id.* In ruling that claims involving double jeopardy constitute a special circumstance as proscribed by 28 U.S.C. § 2254(b)(1)(B), the court in *Gully v. Kunzman*, 592 F.2d 283 (6th Cir. 1979), concluded that "asserting a constitutional immunity from having to undergo 'the risk or hazard of trial and conviction'" fell squarely within the purview of special circumstances. *Id.* at 287 (quoting *Prince v. Georgia*, 398 U.S. 323, 331 (1970)). Thus, a special circumstance exists as a basis to grant a writ of habeas corpus when a federal defense asserted on constitutional grounds is raised in order to prevent trial. *Braden*, 410 U.S. at 489; *Gully*, 592 F.2d at 287.

The federal defense being asserted on constitutional grounds in the present case is a violation of Due Process rights. *Braden, supra*; *Gully, supra*. The Due Process Clause of the Fourteenth Amendment of the Constitution dictates that no state should "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Court in *Truax v. Corrigan*, 275 U.S. 312 (1921), explained:

> The due process clause requires that every man shall have the protection of his day in court, and the benefit of the general law, a law which hears before it condemns, which proceeds not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial, so that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. *Id.* at 332.

14

Therefore, Due Process rights have been violated when there has been a defect in the legal process that robs the aggrieved of a legal outcome that holds integrity. *See Braden, supra*; *Truax, supra.* Thus, to determine whether a Due Process violation has occurred in the context of a one-man grand jury, it is necessary to examine the legal process afforded to the one-man grand jury, and whether a transgression has occurred within that process.

A one-man "grand jury is a creation of statute and draws its extraordinary powers from statute." *People v. Farquharson*, 274 Mich. App. 268, 274 (2007). Under Michigan law, the one-man grand jury powers and procedures are defined by MCL 767.3. *See* Exhibit E

A grand jury proceeding alone determines the course of its inquiry. *People v. Morris*, 228 Mich. App. 380 (1998). Any direction by a judge to sway the course of a grand jury inquiry violates the purpose of the grand jury proceeding and renders the purpose of said proceedings a nullity. *Id.* Such an occurrence would thus result in a violation of the Due Process Clause of the Constitution, and as a federal defense asserted on constitutional grounds would qualify as a special circumstance that renders a writ of habeas corpus appropriate. *Braden, supra*.

In the present case, Defendant's Due Process rights have been clearly violated as per MCL 767.3. When interpreting statutes, courts must assess statutory language in context and must construe the language according to its plain and ordinary

meaning. *People v. Lowe*, 484 Mich. 718, 721–22 (2009). Within the framework of MCL 767.3, the grand jury, or grand juror, has the power to summon and compel witness testimony, issue and enforce subpoenas, and issue indictments on the evidence presented before it. *See* Exhibit E. However, under the express power granted by MCL 767.3, there is no "remand" power that has been illuminated. *See* Exhibit E. Further, under the Michigan Code of Criminal procedure, no such power has been granted, inherently or expressly to a trial judge with said power to order "remand" to a grand jury.

Despite trial courts lacking the authority to remand to a grand jury, it is undisputed that the trial court in the present case did so. Following the April 17, 2020, Motion to Dismiss filed in the trial court, the case was remanded back to the Grand Juror. Yet, as proscribed by MCL 767.3, the trial court did not have the option of remanding back to the Grand Juror; it could only grant or deny the Motion to Dismiss that argued there was a lack of evidence and incorrect photo identification. Thus, by failing to follow the procedures set forth by MCL 767.3, the trial court deprived the Defendant of his Due Process rights.

The basis on which the writ for federal habeas corpus should be granted is that, as described above, the Defendant was deprived of his Due Process rights pursuant to the Fourteenth Amendment of the Constitution. Violations of Due Process rights fall under the protection of the Fourteenth Amendment of the

Constitution, and the Defendant's Due Process rights were violated when the trial court remanded his case to the Grand Juror to determine whether there was a lack of evidence and incorrect photo identification in response to the April 17, 2020, Motion to Dismiss.

Special circumstances have been proscribed by 28 U.S.C. § 2254(b)(1)(B) as exigencies in a case that necessitate a writ of habeas corpus to be granted in federal court. Since a special circumstance exists as a basis to grant a writ of habeas corpus in federal court when a federal defense asserted on constitutional grounds is raised in order to prevent trial, *Braden, supra*; *Gully, supra*, the present case is clearly recognizable as a special circumstance. The constitutionally protected Due Process right in the present case is being asserted as a federal defense. Since a "constitutional immunity" is being asserted, the present case is a clear example of a special circumstance that 28 U.S.C. § 2254(b)(1)(B) proscribes as a basis on which to grant a writ of habeas corpus in federal court. Thus, Defendant has satisfied the requirements of 28 U.S.C. § 2254(b)(1)(B), and a writ of habeas corpus in federal court should be granted.

## IV.    CONCLUSION AND RELIEF SOUGHT

.    WHEREFORE, the Defendant-Petitioner, Tyrone Anderson, respectfully requests that this Court GRANT his Petition for Writ of Habeas Corpus Relief.

Respectfully Submitted,

PERKINS LAW GROUP, PLLC

/s/ Mohammed Nasser_____
MOHAMMED NASSER (P74485)
Attorney for Defendant
615 Griswold, Suite 400
Detroit, MI 48226
Dated:  September 21, 2021                    (313) 964-1702